IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | 18 CR 495 |
| v. | ) | Honorable Sara Ellis |
| | ) | |
| IVAN PARKER, | ) | |
| Defendant. | ) | |

**MOTION TO SUPPRESS EVIDENCE**

NOW COMES defendant IVAN PARKER, by and through his attorney, QUINN A. MICHAELIS, and respectfully requests pursuant to the Fourth Amendment to the United States Constitution, the Federal Rules of Criminal Procedure 12(b)(3), *Illinois v. Gates*, 462 U.S. 213 (1983), *United States v. Leon*, 468 U.S. 897 (1984), *Franks v. Delaware*, 438 U.S. 154 (1978), and *Wong Sun v. United State*, 371 U.S. 471 (1964) that this Honorable Court enter an order suppressing all evidence obtained as a result of the search of 4244 West Cermak, Unit 2ER, Chicago, Illinois and 419 North Broadway, Apt B, Joliet Illinois.

I.     **Factual Background.**

IVAN PARKER has been charged in a one count indictment with Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). The indictment was the result of a robbery of a Loomis guard who was robbed as he was servicing an ATM inside the vestibule of a Chase Bank located at 3856 West 26th Street, Chicago Illinois. The robbery occurred on July 27, 2018. According to a police report prepared after the

1

robbery, robber a male Hispanic (dark skinned) or a male black, 25-30 years old, with facial hair, wearing a black cap, a black zip up jacket and black pants. Agents requested video surveillance around the surrounding area to determine where the suspect had fled and it appeared that the suspect entered a building at address 4246 West Cermak, Chicago, Illinois. According to the affidavit for search warrant, at some undisclosed point, the FBI interviewed Witness F, the owner of the building at 4246 West Cermak. Witness F told the FBI that the exterior door provides access to the entire building, including multiple apartments located at 4244-4250 West Cermak Road. Agents then showed Witness F a surveillance photograph (photographs contained page 15 of Exhibit A). Witness F stated that the individual in the surveillance photograph "resembled" IVAN PARKER, who Witness F had seen with Individual A when they agreed to rent one of his apartments. He went on to claim that IVAN PARKER was living in apartment 4244 West Cermak, Unit 2ER, and provided the FBI with a phone number for IVAN PARKER.

From that point, according to the affidavit (Ex. A and Ex B), the agent swearing to the complaint discovered that the phone number was connected to utility service for Unit 2ER under the name IVAN PARKER. The agent then viewed booking photographs of IVAN PARKER and concluded that IVAN PARKER matches the general physical attributes of the suspect who robbed the bank. Booking photographs of IVAN PARKER were then subsequently used in a photo array which was shown to the victim of the robbery.

The warrant for the search warrant for the Cermak address, and later for the Broadway address were not supported by probable cause and the "good faith" exception to the exclusionary rule does not apply to save the warrant from any taint. Therefore, the evidence obtained from the execution of the search warrants and any fruits of the illegal search must be suppressed.

### II. The Search Warrant in this Case was not Supported by Probable Cause.

The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. amend IV. The right to privacy in one's home is of paramount importance protected by the Fourth Amendment. *See* e.g. *Payton v. New York*, 445 U.S. 573, 585 (1980) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."); *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)(the right "sanctity of private dwellings" has been held to be the right "ordinarily afforded the most stringent Fourth Amendment protection"). Under the Fourth Amendment, a judge may not properly issue a warrant to search a privet dwelling "unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation." *Nathanson v. United States*, 290 U.S. 41, 47(1933). An affidavit must provide the magistrate with a "substantial basis" for determining the existence of probable cause. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). A wholly conclusory statement fails to meet this

requirement. *Id* at 239. Sufficient information must be presented to the magistrate to allow that official to determine whether probable cause exists, his actions cannot be a mere ratification of the bare conclusions of others. *Id.*

Probable cause is premised on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). A probable cause determination is based on the totality of the circumstances. *Gates*, 462 U.S. at 238. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,… there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit. *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967).

When an affidavit for a search warrant is based on information provided by a confidential informant, the informant's "'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Gates*, 462 U.S. at 230; *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Amongst the factors to be considered are (1) the extent to which police corroborated the informant's claims; (2) the degree to which the informant acquired knowledge of the events through first-hand observation; (3) the amount of detail provided; (4) the interval between the date of the events and the police officer's application for the

4

search warrant; and (5) whether the informant personally appeared and testified before the issuing judge. *See Bell*, 585 F.3d at 1049.

In some cases, informants of unknown reliability *can* establish probable cause, but there should be independent police corroboration as well. *Gates*, 462 U.S. at 238-42; *United States v. Koerth*, 312-F.3d 862, 867-68. That is the crux of this case—there was insufficient corroboration of the claims of a first-time informant of unknown reliability. The complaint does not include information that could have adequately corroborated the information supplied by this first-time informant. Indeed, the complaints for search warrants did not even include a blanket assertion that the CI was reliable—although such an assertion without supporting evidence would still have been insufficient. *Koerth*, 312 F.3d at 867. The agents in this case could not present such information in the warrant because it appears that they had never worked with or even met this CI before, and there is additionally no indication that they knew whether this CI had ever provided reliable, accurate information in the past.

Assessing an informant's credibility can also include considerations of whether he has a history of providing reliable information to the police. *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) The Seventh Circuit has emphasized that "[s]uch history is important in determining whether, or the extent to which, an informant's information is colored by a bias against a defendant". *United States v. Searcy*, 664 F.3d 1119, 1123 (7th Cir. 2011)(emphasizing that the informant's pattern of providing information to police that led to the arrest of three

5

other individuals indicated that he was not specifically targeting the defendant, and concluding that there was less concern about whether the informant was a rival drug dealer, and angry customer, or had some other issue with the defendant).

Whether an informant was recently arrested is relevant to his credibility. *Williamson v. United States*, 512 U.S. 594, 607-08 (1994) ("A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation."); *United States v. Olson*, 408 F.3d 366 (7th Cir. 2005)(noting that a newly-arrested informant "merits a greater dose of skepticism when addressing his credibility."

The affidavits in this case omitted many key pieces of information. To start, there was no information the affidavit regarding Witness F's reliability. The affidavits did not indicate whether Witness F was an unquestionably honest citizen, *see Gates*, 462 U.S. at 233-34, or a typical informant. Ex. 1 at 16, Ex. 2 at 17. According to Agent Gourley, who prepared both affidavits, the "FBI interviewed Witness F." *Id*. This witness does not appear to have appeared before a judge to swear to the reliability of the information he provided. Agent Gourley says noting in either affidavit about Witness F's reliability, nor does he provide any information as to whether Witness F had any history as an informant. There is no information in either affidavit regarding whether Witness F had ever provided reliable information in the past, and if so, whether he had been paid for that information, whether that information had been reliable, how many times he had provided

6

reliable information, or the nature of that information. In fact, Agent Gourley did not even include a conclusory statement that he believed Witness F was reliable. *See Koerth*, 312 F.3d at 867 (finding that the affidavit did not support the issuance of a search warrant based in part because "the affidavit fail[ed] to explain the extent, if any, that [the informant] ha[d] previously provided information leading to arrest or prosecutions for criminal activity of any kind.").

Except for Agent Gourley's attempts at corroboration, the affidavits hinged entirely on Witness F's identification of IVAN PARKER, which contained no information about Witness F's track record of reliability.

Furthermore, the affidavits contain no information about Witness F's veracity. The affidavit does not contain information about whether Witness F had any criminal history, nor the nature of any criminal history he may have had. There is no mention about whether Witness F had arrests or convictions demonstrating a history of dishonesty, the use of aliases, or fraud convictions.

The affidavits also omit whether Witness F had any affiliation with a street gang or other criminal organization. If Witness F had such an affiliation, that information is relevant to a determination of his credibility, especially if that information tends to show that Witness F identified IVAN PARKER in order to protect a fellow gang member who was the actual suspect of the robbery, or whether his membership in a criminal organization gave him incentive to provide information against IVAN PARKER.

7

The affidavits also remain silent about the nature of the relationship between Witness F and IVAN PARKER, other than indicating Witness F knew that IVAN PARKER was living in Unit 2ER. The affidavits do not mention for how long Witness F knew IVAN PARKER, whether he regularly saw him, or whether they were acquaintances. Agent Gourley provides no information in either affidavit to give the judge an opportunity to evaluate the nature of Witness F and IVAN PARKER'S relationship to determine whether Witness F had any motive to provide information against IVAN PARKER.

More troubling is that the affidavits do not contain any physical description of IVAN PARKER as provided by Witness F. The affidavits state only that Witness F was shown a surveillance photograph (which is difficult to decipher in Exhibit A), at which point he stated that the person in the photo "resembled" IVAN PARKER. The agent did not provide Witness F with any photo arrays. Agent Gourley simply wanted a name, any name, to build a case around, no matter how shaky the foundation on which that case was built. Witness F's unreliable information that the person in the surveillance photo "resembled" IVAN PARKER is the only piece of information presented in the affidavits for search warrants that tie IVAN PARKER to the robbery of the Chase Bank.

Without Witness F's scant information, there is nothing else to present in the affidavit for the search warrant, and without more, these affidavits cannot be relied upon to adequately protect IVAN PARKER from unreasonable searches and seizures. The search warrants and the complaint are both based on information

provided by Witness F. If that information fails because of a lack of credibility and reliability of Witness F, then the search of the Cermak apartment must also fail, as well as the subsequent warrant and search of the Broadway address, and the arrest of IVAN PARKER. In short, the affidavits for search warrant did not provide the issuing judge with the sufficient showing of probable cause to issue the search warrants. *See Koerth*, 312 F.3d at 867-70 (previously unknown informant stated that he saw drugs at defendant's residence and had purchased from the defendant in the past; the court found that the affidavit lacked an adequate foundation in part because the police did not take sufficient steps to corroborate the informant's statements.).

### III. The Good Faith Exception Should Not Apply In This Case.

Having obtained the search warrants from the issue judge, the inquiry then shifts to whether the FBI agents relied on the warrants in good faith. Under the good faith exception to the exclusionary rule, courts will not suppress evidence when a law enforcement officer relies in objective good faith on a faulty but facially valid warrant. *United States v. Leon*, 468 U.S. 897, 962 (1984). The "good faith exception" does not apply (and therefore the evidence should be suppressed) if (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under indistinguishable facts; (2) the affidavit is so plainly deficient that any reasonably well-trained officer would know that probable cause was lacking; or (3) the officer was dishonest or reckless in preparing the affidavit. *Bell* 585 F.3d 1052; *Koerth*, 312 F.3d 869.

The facts in this case show that the good faith exception should not apply here. The investigation in this case had essentially stagnated until the interview of Witness F. Witness F's identification of IVAN PARKER as someone who "resembled" the individual in the surveillance photo is the only piece of information that connects IVAN PARKER in any way to the robbery of the Chase Bank. However, Agent Gourley chose to provide absolutely no facts critical to the inquiry into Witness F's reliability and veracity. This suggests bad faith, and these omissions by Agent Gourley cannot be overlooked, particularly because FBI agents often must author very comprehensive affidavits for search warrants and should be well aware of the what the law requires. These warrants, however, fell short.

IV.  Conclusion

For the foregoing reasons, IVAN PARKER respectfully requests that this Court enter an order suppressing all evidence that was seized as a result of the search of both 4244 West Cermak, Unit 2ER, Chicago, Illinois, and 419 North Broadway, Apt B, Joliet, Illinois, and any fruits of those searches. Alternatively, IVAN PARKER requests that this Court grant an evidentiary hearing to more fully develop these factual matters.

Respectfully submitted,

/s/Quinn A. Michaelis

Quinn A. Michaelis
Attorney for IVAN PARKER
73 W. Monroe, Suite # 106
Chicago, Illinois 60601
312-714-6920

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2019, I electronically filed the above

**<u>MOTION TO SUPPRESS EVIDENCE</u>**

with the Clerk of Court using the CM/ECF system to all listed parties in the case.

Respectfully Submitted on April 2, 2019

By His Attorney,

s/ Quinn A. Michaelis

Quinn A. Michaelis
Attorney for IVAN PARKER
73 W. Monroe, Suite # 106
Chicago, Illinois 60601
312-714-6920