UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 18 CR 495 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| IVAN PARKER | ) | |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S
MOTIONS TO SUPPRESS**

The UNITED STATES OF AMERICA, by and through its attorney, JOHN R.
LAUSCH, JR., United States Attorney for the Northern District of Illinois,
respectfully submits the following response to defendant Ivan Parker's motions to
suppress. Dkt. 53-54.[1] For the reasons outlined below, defendant's motions should
be denied without an evidentiary hearing.

## I.    Introduction and Background

On July 27, 2018, at approximately 6:59 a.m., an armed guard/ATM
technician employed by Loomis Armored U.S. ("Victim A") was robbed at gunpoint
by an unknown black male, later identified as defendant, while servicing a Chase
Bank ATM, located at 3856 West 26th Street, Chicago, Illinois.[2] See Exhibit A at 2.
The loss was approximately $106,335. *Id*. at 4. Defendant was charged with one

---

[1] Defendant also filed *pro se* motions to suppress evidence and to suppress identification, Dkt. 50-51,
but given that he is represented by counsel, the government is responding only to the arguments
raised by counsel.

[2] The following information is based on the affidavit supporting the search warrant for defendant's
residence, reports, and recordings, which have been previously provided to defense counsel.

count of obstructing commerce by robbery, in violation of Title 18, United States Code, Section 1951(a).

The FBI interviewed Victim A concerning the circumstances surrounding the robbery. *See* Ex. A at 2-4. As part of its investigation, FBI also obtained numerous pieces of video surveillance footage, including from Chase Bank, from the armored vehicle Victim A had used, and from nearby businesses and residents. As detailed in the search warrant at paragraphs 12-20, the defendant was captured on video surveillance in an alley parallel to 26th Street, then seen riding a bicycle toward Pulaski, and later on 25th Place. More footage showed the defendant on a bicycle near Ogden and Keeler, and eventually in the area of West Cermak. Other pieces of video footage depicted the defendant as he dismounted the bicycle and left it near a dumpster in the vicinity of an alley west of Kildare and north of Ogden. At one point, the defendant threw a black bag over a fence, jumped over the fence, picked up the bag and continued on his way out of view. *Id*. at 8-15.

FBI obtained additional surveillance footage from a location on West Cermak depicting the defendant walking toward an apartment building, wearing jeans, a white undershirt, black jacket, and carrying a black object in his left hand. This footage ultimately depicted the defendant entering an apartment building located at 4246 West Cermak Road, Chicago, Illinois at approximately 7:17 a.m., on the same day of the robbery. *Id*. 15-16.

As detailed in the search warrant at paragraph 21, the FBI interviewed Witness F, who was the owner of the building that contained the apartments

located at 4244 – 4250 West Cermak Road, including 4246 West Cermak. *Id*. at 16. Witness F stated that the exterior door to 4246 West Cermak provided access to all of the apartments located at 4244 – 4250 West Cermak. *Id*. The FBI showed Witness F a still image of video footage of the defendant escaping with the black bag after the robbery, and Witness F stated that the person depicted in the still image resembled the defendant. *Id*. at 16-17. Witness F explained that the defendant was a resident of 4244 West Cermak, 2ER, and that defendant was with Individual A at the time they first rented the apartment. *Id*. at 17. Witness F provided the current telephone number for defendant as XXX-XXX-2388. *Id*.

A search of law enforcement databases revealed XXX-XXX-2388 was associated with a utility service in the defendant's name at the Cermak apartment. *Id*. Law enforcement also obtained a copy of defendant's state identification and learned that defendant lived at 4244 West Cermak, Unit 2ER. *Id*. Upon viewing known photographs of the defendant, including a booking photograph taken on June 16, 2017, law enforcement concluded that a tattoo on defendant's right neck area was consistent with the location of a bandage on the robber's neck during the robbery. *Id*. at 17-18.

On August 8, 2018, FBI conducted a sequential photographic array with Victim A by an agent who was not familiar with the underlying facts of the case. After providing Victim A with instructions for viewing the array, Victim A identified the photograph that depicted the defendant, although Victim A stated that he was not 100% sure in his selection. *See* Exhibit B.

3

*Search of the West Cermak Apartment*

On August 10, 2018, Magistrate Judge Maria Valdez of the United States District Court for the Northern District of Illinois issued a search warrant for defendant's residence 4244 West Cermak, Unit 2ER, Chicago, Illinois, based on probable cause set forth in the affidavit of FBI Special Agent Dustin Gourley. *See* Exhibit A.

FBI executed the search warrant that same day. Although law enforcement observed the defendant re-enter the Cermak apartment building just before the search commenced, only a woman, Individual A, was present inside the residence at the time of the search.

In an effort to locate the defendant, law enforcement knocked on other apartment doors of the building and eventually found the defendant in another unit of the building, at which time he was placed under arrest.

*Search of the Broadway Apartment*

The government obtained a second search warrant shortly after defendant's arrest. *See* Exhibit C. On August 17, 2018, the defendant spoke with his sister, Individual TP, in recorded jail calls. In the calls, the defendant discussed that an associate of his had brought Individual TP a large amount of money for Individual TP to hide. Based on this information, on September 13, 2018, Magistrate Judge Susan E. Cox of the United States District Court for the Northern District of Illinois issued a search warrant for Individual TP's residence at 419 North Broadway,

4

Apartment B, Joliet, Illinois. *Id*. The warrant was executed on September 14, 2018, and during the search, law enforcement recovered approximately $24,000 in cash.

## II. Argument

Defendant's motions should be denied without an evidentiary hearing. As detailed below, first, defendant lacks a personal expectation of privacy (*see Minnesota v. Carter*, 525 U.S. 86, 87-88 (1998)) to challenge the search of the Broadway apartment executed at his sister's residence. Second, both search warrants were supported by probable cause: the investigation led FBI to defendant's apartment building on Cermak and to Individual TP's residence on Broadway, and there was evidence suggesting that fruits and instrumentalities of the crime would be found inside the residences. Moreover, even if, *arguendo*, the Court found that the search warrants were not supported by probable cause, suppression of evidence is not an appropriate remedy because the agents executing the search warrants acted in good faith. *See United States v. Leon*, 468 U.S. 897 (1984).

Finally, defendant's motion to suppress the identification of Victim A should be denied.

### A. Defendant lacks a personal expectation of privacy to challenge the search warrant for his sister's apartment.

Defendant cannot seek suppression of the items seized during the search of his sister's apartment because he has failed to establish that he had a subjective expectation of privacy in his sister's home. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the

5

introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.")

A defendant who is challenging the legality of the seizure of evidence must establish that he had a reasonable expectation of privacy in the area from which the challenged evidence was seized. This is because the Fourth Amendment's protection against unlawful searches and seizures is "a personal right" that can only be invoked by the individual whose privacy rights have been aggrieved by the search. *United States v. Swift*, 220 F.3d 502, 510 (7th Cir. 2000). Therefore, "[a] defendant who objects to the search of a particular area bears the burden of proving a legitimate expectation of privacy in the area searched." *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) (citation omitted). A defendant has a reasonable expectation of privacy if "he held an actual subjective expectation of privacy and that the expectation 'is one that society is prepared to recognize as reasonable.'" *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (quoting *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007)).

Here, defendant had no reasonable expectation of privacy in his sister's apartment. Defendant has not put forth any evidence suggesting, for instance, that he lived at the Broadway apartment prior to his arrest or had been residing there such that an expectation of privacy had developed. Indeed, the defendant had been living at the Cermak apartment at the time of the robbery, and there is nothing to suggest that he was living with his sister. Courts have declined to suppress evidence under circumstances where the defendant could not show a reasonable

6

expectation of privacy in the premises. *See e.g. United States v. Randle*, 966 F.2d 1209, 1212-13 (7th Cir. 1992) (the court declined to suppress evidence where the premises belonged to other individuals). Accordingly, his Motion should be denied.

## B. The affidavit in support of the Cermak search warrant contained sufficient probable cause.

Because the evidence defendant seeks to suppress was seized pursuant to a search warrant, defendant bears the burden of proving the illegality of that warrant. *United States v. Longmire,* 761 F.2d 411, 417 (7th Cir. 1985) (*citing* 3 LaFave, Search and Seizure § 11.2, at 499 (2d ed. 1981)). A determination into whether the defendant has met that burden centers on "whether the judge who issued the warrant . . . acted on the basis of probable cause." *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008). In addition, the issuing judge's conclusions are to be accorded "great deference." *Id.*

Probable cause exists when the totality of circumstances set forth in the affidavit supporting the search warrant "sets forth sufficient evidence to persuade a reasonably prudent person that a search will uncover evidence of a crime." *United States v. Carson*, 582 F.3d 827, 831 (7th Cir. 2009), citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

As the Seventh Circuit has repeatedly held: "a magistrate's determination of probable cause is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the

7

crime and located in the place indicated." *United States v. Wiley*, 475 F.3d 908, 915 (7th Cir. 2007) (quoting *United States v. Newsome*, 402 F.3d 780, 782 (7th Cir. 2005)).

Here, the totality of the circumstances amply supported the magistrate judge's findings that there was probable cause to issue the search warrant. The affidavit laid out in detail the information obtained through surveillance videos, which showed that the defendant went to his apartment building after the robbery. The affidavit also detailed how law enforcement concluded that the defendant was the robber, including that the defendant matched the general description of the robber, that he had a tattoo in the exact same location where the robber covered his skin with a bandage, that Victim A identified defendant as the robber (albeit with less than 100% certainty), and that Witness F, the owner of the apartment building, stated that the robber resembled the renter of Unit 2ER, which was the particular unit rented by the defendant. *See* Ex. A at 4-18.

Defendant argues that the facts as set forth in the affidavit fail to establish probable cause because the affidavit did not sufficiently corroborate the information provided by Witness F, who defendant labels as a "confidential informant." Dkt. 54 at 6-9. First, Witness F, was not a confidential informant; he was simply a witness with relevant information as the owner of the apartment building.[3] Accordingly, defendant's reliance on *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002), is

---

[3] The use of "Witness F" to identify the witness does not mean he was a confidential informant. All of the witness names in the affidavit were removed simply to protect them from having their names made part of the public record.

misplaced. Dkt. 54 at 4-9. Second, the affidavit lays out how FBI corroborated Witness F's information, including by checking utility records, obtaining known photographs of the defendant, and by conducting a photo line-up with the victim of the robbery.

In this case, the FBI approached Witness F (not the other way around) because he owned the building where the robber had been seen entering. Exhibit A at 16. Witness F merely answered questions posed by law enforcement and did not provide information of a crime because Witness F had not witnessed any crime. After being shown a still image of video footage obtained during the investigation, Witness F stated that the person depicted resembled the defendant, who resided in a particular apartment.

The affidavit describes FBI's efforts to corroborate Witness F's information, including by verifying that utilities for that apartment were associated with defendant's phone number, and by comparing images from the robbery to known photographs. Thus, Witness F's interview was a part of the chain of events, but Witness F's information was not the only evidence supporting the magistrate judge's probable cause finding.

The totality of the circumstances supports the magistrate judge's determination of probable cause. Because the affidavit set forth probable cause to believe that evidence, instrumentalities, and/or fruits of violations of the robbery would result from a search of the Cermak apartment, the evidence should not be suppressed.

C.     **The agents relied in good faith on the probable cause determination.**

Even if this Court determined that the magistrate judge did not have a substantial basis for concluding that probable cause existed, the Court should nonetheless deny defendant's motion to suppress because the agents acted in good faith in executing the warrant.

A facially valid warrant issued by a neutral, detached magistrate will be upheld if law enforcement relied on the warrant in good faith. *Leon,* 468 U.S. 89 at 922-23 (1984). Thus, "suppression of evidence seized pursuant to a search warrant that is later declared invalid is inappropriate if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause." *United States v. Watts*, 535 F.3d 650, 656-57 (7th Cir. 2008) (citing *Leon*, 468 U.S. at 924).

The fact that law enforcement sought to obtain a warrant in the first place is *prima facie* evidence that he was acting in good faith. *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009); *Leon,* 468 U.S. 897 at 921 n.21. "A defendant may rebut this evidence by demonstrating that the issuing judge failed to perform his neutral and detached function and served as a rubber stamp for the police; that the officer was dishonest or reckless in preparing the affidavit; or that the affidavit was so lacking in probable cause that no officer could have reasonably relied on it." *Bell*, 585 F.3d at 1052 (citing *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008).

Here, the FBI obtained a search warrant for defendant's apartment. Thus, defendant must rebut the presumption that FBI acted in good faith. In his Motion, defendant does not suggest that the issuing judge failed to perform a neutral and

detached function. Instead, he asserts that the agent omitted information from the affidavit about Witness F's reliability, which he claims suggests bad faith on the agent's part. Dkt. 54 at 10. Specifically, defendant states that Witness F's identification of defendant was "the only piece of information that connect[ed] [defendant] in any way to the robbery" and that the lack of facts as to Witness F's reliability and veracity "suggests bad faith." Dkt. 54 at 10.

Defendant is wrong on both counts. First, as explained above, FBI corroborated Witness F's information by checking utility records, by performing a photo line-up with the victim of the robbery, and by conducting its own comparison of the robber to a known photograph of defendant. Second, the affidavit included the source of Witness F's knowledge by stating that Witness F was the owner of the apartment building and had personally seen defendant when he and another person agreed to rent the apartment. Accordingly, as explained above, the affidavit was not so lacking in probable cause that no officer could have reasonably relied on it.

FBI executed the search warrant on the same day it was issued and relied on the warrant issued by the magistrate judge in good faith. Even if this Court were to find that the affidavit did not establish probable cause, it is not so devoid of facts that a reasonable law enforcement officer could not have objectively believed that probable cause existed. Defendant's motion should be denied.

### D.     Defendant's motion to suppress Victim A's identification should be denied.

Defendant argues that Victim A's identification of defendant should be suppressed as unreliable because Victim A had a limited opportunity to see

11

defendant and Victim A was not 100% sure of his identification. Dkt. 53. Defendant's motion should be denied because neither the circumstances of the robbery nor the circumstances of the photo array and subsequent identification of the defendant create a substantial likelihood of irreparable misidentification. Defendant's arguments go toward the weight of the evidence, and the identification of defendant by the victim is admissible.

"Suppression ensues only when there is 'a very substantial likelihood of *irreparable* misidentification'" — "irreparable in the sense that the procedures of trial would not suffice to allow jurors to separate reliable from mistaken identifications." *United States v. Johnson*, 745, F.3d 227, 229 (7th Cir. 2014). To determine whether introduction of an eyewitness identification obtained from a law enforcement identification procedure violates a defendant's due process rights, the court "undertake[s] a well-settled, two-pronged analysis." *United States v. Recendiz*, 557 F.3d 511, 524 (7th Cir. 2009). First, defendant must establish that the identification procedure was "unduly suggestive." *Id*. Second, even if the identification procedure is found unduly suggestive, the identification "can still be admissible so long as the [identification] testimony was reliable, given the totality of the circumstances." *United States v. Moore*, 115 F.3d 1348, 1360 (7th Cir. 1997). Suppression is appropriate only where "there is a very substantial likelihood of irreparable misidentification" resulting from unnecessary law enforcement suggestion. *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (internal quotation marks omitted). To meet the high standard of exclusion for an eyewitness

identification, defendant bears the burden of showing not only that the identification procedures were unnecessarily suggestive, but also that the eyewitness identifications are not reliable given the totality of the circumstances. *Perry v. New Hampshire*, 565 U.S. 228, 239-40 (2012).

The sequential photo array shown to Victim A was not unduly suggestive. It included a photograph of defendant, as well as photographs of other individuals who looked similar to him. The six photographs were all printed in color and were the approximate same size. Under these circumstances, the array cannot be considered suggestive. *See United States v. Carter*, 410 F.3d 942, 948 (7th Cir. 2005) (collecting cases holding that six is a sufficient number of photos for such a line-up when the photographs are similar).

Other safeguards were utilized to ensure reliability. The agent who administered the photo array had no underlying knowledge of the facts of the case. And there is no evidence that the agent improperly influenced Victim A. At the outset, Victim A was instructed, "The person who committed this crime may or may not be among the photographs presented." *See* Exhibit B. Accordingly, the identification was not unduly suggestive.

Defendant nonetheless argues that Victim A's identification of him was unreliable. Dkt. 53 at 3. When considering whether an identification made in suggestive circumstances is still reliable, courts consider: (a) the opportunity of the witness to view the offender at the time of the crime; (b) the witness' degree of attention; (c) the accuracy of the prior description of the offender; (d) the level of

certainty exhibited at the confrontation; and (e) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). "Generally speaking, the jury can intelligently weigh the reliability of a questionable identification.... A district court should remove the evidence from the jury's consideration only if the identification is so unreliable that the jury is likely to be misled." *United States v. Bolton,* 977 F.2d 1196, 1201 (7th Cir. 1992) (internal citations omitted).

Here, Victim A saw the robber when he was in the bank vestibule, during which time Victim A and the defendant interacted with one another. Victim A also observed the defendant as he fled the bank. Shortly after the robbery, Victim A gave a description of the defendant to law enforcement that was consistent with the video surveillance of the incident. The photo array was conducted on August 8, 2018, less than two weeks after the robbery. The Seventh Circuit has upheld the use of identifications under similar circumstances. *See, e.g.*, *United States* v. *Griffin*, 493 F.3d 856, 866 (7th Cir. 2007) (finding an identification reliable where the witness came face-to-face with the robber and then walked with the robber to the back of the currency exchange); *United States* v. *Curry*, 187 F.3d 762, 769 (7th Cir. 1999) (finding an identification reliable even where the witness "had only a short time to view" the robber).

Because the photo array was not unduly suggestive and the circumstances of Victim A's identification demonstrates its reliability, it should be admitted at trial. "The normal way of dealing with the perceptual biases and errors that are endemic

14

to eyewitness identification is to expose the problem at trial so that a discount may be applied to the testimony, rather than to exclude relevant evidence." *United States v. Gonzalez*, 863 F.3d 576, 587 (7th Cir. 2017) (internal quotations and citation omitted). Accordingly, defendant's motion should be denied.

### E. Defendant's motions should be denied without an evidentiary hearing.

It is unnecessary for the Court to conduct an evidentiary hearing prior to ruling on defendant's motions. An evidentiary hearing is necessary only if the defendant "identifies a significant, disputed factual issue that must be resolved." *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) (citation omitted). There are no disputes over the facts material to this Court's determination; therefore, the Court can rule on the motions based on the briefs filed by the parties.

## III. Conclusion

WHEREFORE, the government respectfully requests that this Court deny defendant's pretrial motions, without conducting an evidentiary hearing.

<div style="margin-left: 40%;">

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney


By: */s/ Tobara Richardson*
TOBARA S. RICHARDSON
Assistant United States Attorney

</div>

May 7, 2019