UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 18 CR 495 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| IVAN PARKER, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The government alleges that Defendant Ivan Parker robbed over $100,000 from an ATM technician who was servicing an ATM in the field. After the technician identified Parker from a photo lineup, the FBI executed a search warrant at Parker's apartment, where they discovered evidence in the form of proceeds from the robbery. They subsequently executed a second search warrant at Parker's sister's home and recovered more proceeds from the robbery. Parker first moves the Court to suppress the technician's identification of Parker as unreliable. Second, Parker moves the Court to suppress the fruits of the searches arguing that the supporting affidavits lacked probable cause and the good faith exception does not apply in this case. Third, Parker asks in the alternative for an evidentiary hearing to develop the record. Because the police did not use suggestive procedures during the photo lineup, the Court denies Parker's motion to suppress the identification. Because the first search warrant was supported by probable cause, and because Parker lacks standing to challenge the second search warrant, the Court likewise denies Parker's motion to suppress the searches. Lastly, because an evidentiary hearing is unnecessary, the Court denies Parker's request for a hearing.

# BACKGROUND[1]

On July 27, 2018, shortly before 7 a.m., Peter Sarnecki, an ATM technician, walked into 3856 West 26th Street, Chicago, Illinois, to service a Chase Bank ATM. Sarnecki, who works for Loomis Armored U.S., was armed and also carried a black bag with him that contained cash for balancing the ATM. There were several customers present as Sarnecki began working on one of the ATMs located in the northeast side of the vestibule. Soon, Sarnecki was alone in the vestibule with another man. The man approached Sarnecki and stated, "I don't want to hurt you, but," and pointed a gun towards Sarnecki's head. Doc. 54-1 ¶ 8. Sarnecki attempted to push the gun away, and the man pepper-sprayed Sarnecki in the face. The man then grabbed the black bag containing the cash and ran out of the building, heading north on Springfield Avenue. Sarnecki briefly attempted to follow the man but stopped pursuing the man once he turned into an alley. The bag contained approximately $106,335.

The FBI collected surveillance videos from Chase Bank, the armored vehicle Sarnecki had used, as well as several businesses and residents in the surrounding area. The different videos allowed agents to piece together the direction in which the man fled, eventually leading them to an apartment building located at 4246 West Cermak Road, Chicago, Illinois.

Agents interviewed the building owner at 4246 West Cermak ("the Building Owner"). The Building Owner stated that the exterior door provides access to the entire building, including apartments at 4244 through 4250 West Cermak. The FBI showed the Building Owner a still photo of the suspect from one of the surveillance videos they had collected. The Building Owner stated that the man resembled Parker and that the Building Owner had seen Parker when he and a

---

[1] Facts in the background section are taken from the parties' briefs and the exhibits attached thereto. As addressed later in the Opinion, the Court finds that an evidentiary hearing is unnecessary. *See United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) ("District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion.").

woman had agreed to rent Unit 2ER at 4244 West Cermak (the "Chicago Apartment"). The Building Owner also provided a picture of Parker's state identification as well as Parker's phone number. The FBI searched law enforcement databases and found that Parker's phone number was associated with a utility service at the Chicago Apartment.

FBI agents also interviewed Sarnecki as part of their investigation. Sarnecki described the man who robbed him as being in his late twenties to early thirties and approximately 6'0" to 6'2". Sarnecki also described the clothes that the man was wearing. FBI agents conducted a double-blind sequential photo lineup, consisting of six headshots of African American men with short hair and similar facial hair. Sarnecki viewed the lineup twice without identifying anyone. He then indicated that photo number three—Parker's photo—looked like the man who robbed him, although he was not 100% sure. Sarnecki explained that the incident happened very quickly, and he had only seen the man out of the corner of his eye before the robbery occurred. He also stated that he had seen surveillance photos in the Chicago Sun Times and that the person in those photos was the man who committed the robbery.

Based on this information, the FBI applied for a warrant to search the Chicago Apartment. In addition to documenting the investigation already described, the agent who prepared the warrant application stated that he had "viewed Parker's booking photographs and state identification card, and Parker matches the general physical attributes of the [suspect]." Doc. 54-1 ¶ 23. Parker also had a tattoo on his right neck, and this matched an area on the suspect's neck that was covered by a white material during the robbery. The affidavit further stated that Parker had a felony criminal history involving firearms, assault, and drug convictions.

A magistrate judge issued the warrant to search the Chicago Apartment ("Chicago Warrant") on August 10, 2018. That same day, agents executed the warrant and found

approximately $7,010 in cash, in addition to jewelry, pepper spray, a gun, and drugs. Parker was not in the apartment, although agents later found him in a different unit in the building.

The government charged Parker with robbery on August 13, 2018. On August 15, 2018, the Court ordered Parker detained without bond pending trial. While Parker was detained, the FBI subpoenaed Parker's jail calls. In a recording from August 17, 2018, Parker called his sister to ask whether another man brought her "a lot" of money, referring to "50" or $50,000 at one point during the call. Doc. 54-2 ¶¶ 27–29, 34–36. Based on this information, the FBI applied for a second warrant to search Parker's sister's apartment, located in Joliet, Illinois ("Joliet Warrant"). A magistrate judge issued the Joliet Warrant on September 13, 2018. While executing the warrant, agents found approximately $24,000 in cash.

## ANALYSIS

### I. Motion to Suppress Identification

Police identification procedures violate due process if they are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Recendiz*, 557 F.3d 511, 524 (7th Cir. 2009) (quoting *United States v. Williams*, 522 F.3d 809, 810 (7th Cir. 2008)). To determine if Sarnecki's identification violated Parker's constitutional rights, the Court applies a two-step analysis. Parker must first establish that the FBI used "unnecessarily suggestive" procedures to obtain the identification. *Perry v. New Hampshire*, 565 U.S. 228, 248, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012). Second, the Court considers whether the identification is reliable under the totality of circumstances. *Id.* at 239–240, 248.

Parker does not make any argument that the FBI's procedures were "suggestive and unnecessary." *Id.* at 239. Nor does the evidence support such a conclusion. The photo array

contained six pictures. *See United States v. Carter*, 410 F.3d 942, 948 (7th Cir. 2005) ("Six is a sufficient number of photos for such a line-up."). The FBI used a double-blind procedure. *Hart v. Mannina*, 798 F.3d 578, 588 n.1 (7th Cir. 2015) (explaining double-blind administration of lineups is the preferred method). The FBI agent also instructed Sarnecki that the culprit's photo may or may not be included in the array. *See United States v. Johnson*, 745 F.3d 227, 228 (7th Cir. 2014) ("Careful officers tell a witness that a photo spread does not necessarily include any suspect[.]"). They proceeded to show the photos sequentially, consistent with best practices. *Id.* (explaining that a "sequential display is preferable because it forces the witness to compare each photograph against memory, rather than one photograph against another"). Additionally, the photos depicted six African American men with short hair and similar facial hair, whose attributes were sufficiently comparable to avoid highlighting any particular subject. *See United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir. 1998) (noting that "[a] lineup of clones is not required," and finding photo array of six African American men with short hair, similar facial hair, and other similar attributes not suggestive). As such, there is nothing to indicate the FBI impermissibly influenced Sarnecki's identification.

Instead, Parker argues that the brevity of Sarnecki's encounter with the robber and his uncertainty during the photo lineup demonstrate the identification is not reliable. But these facts are only relevant to determining whether the identification was reliable under the totality of the circumstances. *Perry*, 565 U.S. at 239 n.5 (factors relevant to the reliability of an identification include: the witness' opportunity to view the suspect, the accuracy of her description, her "level of certainty," and "the time between the crime and the confrontation"). Because the identification procedures were not suggestive, the Court does not reach the second step of the analysis. *Id.* at 248.

5

Parker can, of course, argue to the jury that Sarnecki's identification of Parker is not reliable. *See id.* at 232 ("[T]he reliability of relevant testimony typically falls within the province of the jury to determine."). But in this case, there is no evidence that the FBI used impermissible means to taint the procedure. For these reasons, Parker cannot show that Sarnecki's identification violated his due process rights so as to warrant its suppression.

## II. Motion to Suppress Search Warrants

Issuing a search warrant involves "a practical, common-sense" determination: does the supporting affidavit establish a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). A reviewing court gives "great deference" to the issuing magistrate's determination and must only "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 236, 238–39 (citations omitted). This determination looks at the totality of the circumstances, "including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Id.* at 238. A magistrate's determination "should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999) (citation omitted).

### A. Chicago Warrant

"[G]iven all the circumstances set forth in the affidavit," the Court finds there was probable cause to issue the Chicago warrant. *Gates*, 462 U.S. at 238. The affidavit chronologically documented the investigation, including the surveillance videos that led the FBI to the Chicago Apartment, the Building Owner's identification of Parker as a resident at the

Chicago Apartment, and Sarnecki's identification of Parker from the photo array. *See, e.g.*, *Hart*, 798 F.3d at 587 ("Probable cause can be based on a single identification from a credible eyewitness."); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 440 (7th Cir. 1986) ("[A] single eyewitness's statement—without further investigation or a narration of contrary evidence—can support a warrant."). The FBI agent also averred that Parker looked like the man in the surveillance videos. *See McDaniel v. Polley*, 847 F.3d 887, 895 n.5 (7th Cir. 2017) (explaining that officer's "tentative" identification from photo-array—stating that the defendant "look[ed] like" the murder suspect—was enough for probable cause to arrest defendant), *cert. denied*, 138 S. Ct. 554, 199 L. Ed. 2d 435 (2017). Under the circumstances, this was enough to establish probable cause. *See McDaniel*, 847 F.3d at 895 n.5; *Hart*, 798 F.3d at 587.

Parker argues that the warrant hinged on the Building Owner's identification, and that it cannot stand on the uncorroborated statement of a first-time informant. But courts have drawn a distinction between "ordinary citizens" on the one hand, and anonymous tipsters or police informants on the other. *See Edwards v. Cabrera*, 58 F.3d 290, 294 (7th Cir. 1995) ("[A] citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves." (quoting *United States v. Towns*, 913 F.2d 434, 441 (7th Cir. 1990))). Here, it was reasonable for the magistrate to infer that the Building Owner was just such an "honest citizen." *Gates*, 462 U.S. at 240 (explaining magistrates may draw reasonable inferences from the material submitted with applications for warrants). First, the FBI was aware of the Building Owner's identity, and she helped to identify Parker at the FBI's request, rather than coming forward on her own. *See J.B. v. Washington Cty.*, 127 F.3d 919, 929 (10th Cir. 1997) (explaining courts are skeptical of "anonymous tipsters, whose motives and bases of knowledge are unknown to the investigating officers"). The fact that she was "gainfully

7

employed as a [landlord] indicated to the officers that [s]he probably was not a random criminal." *Edwards*, 58 F.3d at 294. The Building Owner also displayed her veracity by producing Parker's phone number and a photo of Parker's identification, information that helped the FBI corroborate the Building Owner's statements. There was "no evident motive to lie," and thus, her statement had "more probative value than, for example, incriminating testimony from inmates, suspects, or friends or relations of the accused." *House v. Bell*, 547 U.S. 518, 552, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006). For these reasons, the Court finds that the Building Owner's statement was reliable, and the magistrate had a substantial basis for believing contraband or other evidence would be found at the Chicago Apartment. *Gates*, 462 U.S. at 238; *see also United States v. Geasland*, 694 F. App'x 422, 431 (7th Cir. 2017) ("When an officer has received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause[.]" (citation omitted) (internal quotation marks omitted)), *cert. denied*, 138 S. Ct. 699, 199 L. Ed. 2d 574 (2018). Because the Chicago Warrant was supported by probable cause, the Court need not consider Parker's additional arguments regarding the good faith exception.

    **B. Joliet Warrant**

The Government argues that Parker does not have standing to challenge the search of his sister's apartment. *See Rakas v. Illinois*, 439 U.S. 128, 134, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). Parker can object to the Joliet Warrant if he can show he had a "legitimate expectation of privacy" in his sister's apartment. *Terry v. Martin*, 120 F.3d 661, 663 (7th Cir. 1997) (quoting *Katz v. United States*, 389 U.S. 347,

353, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). "A person's expectation of privacy is legitimate only if it is one that society is willing to accept." *Id.* Parker asserts that he was an overnight guest at the apartment, and therefore has standing pursuant to *Minnesota v. Olson*, 495 U.S. 91, 98–99, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990). To support his claim, Parker points to a statement by his sister explaining that Parker "came to her home and stayed overnight before leaving the next day while she was at work." Doc. 60 at 1. However, Parker has not provided this statement for the Court to review.

Although it is unclear when Parker was an overnight guest at his sister's apartment, Parker had been in jail for a month when the FBI executed the Joliet Warrant. Further, the jail calls indicate that someone else brought the money to his sister's apartment, rather than Parker himself. A single overnight visit from a month prior to the execution of the search warrant does not implicate the same expectations of privacy underlying the Supreme Court's decision in *Minnesota v. Olson*, 495 U.S. at 99 ("From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside."); *see also United States v. Merricks*, 572 F. App'x 753, 755 (11th Cir. 2014) (defendant who stayed at residence three weeks prior to his arrest lacked a reasonable expectation of privacy). For these reasons, the Court finds that Parker lacks standing to challenge the Joliet Warrant.

Additionally, even if Parker had standing to challenge the Joliet Warrant, his motion would still fail. Parker does not make any arguments specific to the Joliet Warrant and instead contends that it must be suppressed because the Chicago Warrant was invalid.[2] Because the Court has already addressed Parker's arguments regarding the Chicago Warrant in the preceding

---

[2] While the Joliet Warrant includes largely the same information that was in the Chicago Warrant, it also details the proceeds that were recovered from the Chicago Apartment, in addition to Parker's jail calls to his sister. Parker makes no arguments regarding this additional information.

9

section, they fare no better here. Consequently, even if the Court assumes that Parker has standing to challenge the Joliet Warrant, the affidavit provided a "substantial basis" for the magistrate's probable cause determination, and Parker cannot prevail on his motion.

## III. Evidentiary Hearing

"Evidentiary hearings on motions to suppress are not granted as a matter of course but are held only when the defendant alleges sufficient facts which if proven would justify relief." *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). As such, Parker bears the burden of showing that there are "disputed issues of material fact which will affect the outcome of the motion." *Id*. Parker must also allege facts that are "definite, specific, detailed, and nonconjectural." *United States v. Torres*, 191 F.3d 799, 811 (7th Cir. 1999).

With respect to the identification issue, Parker contends that a hearing is necessary to examine Sarnecki and "to determine what the FBI's 'sequential photographic array' actually entailed, and what the totality of the circumstances were surrounding that array."[3] Doc. 51 at 3. Parker does no more than speculate as to what an examination of Sarnecki would yield, and consequently he has not shown that there is no material dispute surrounding the identification procedure that requires an evidentiary hearing. *Torres*, 191 F.3d at 811 (finding evidentiary hearing unnecessary where defendants argued for "opportunity to cross-examine identification witnesses to determine what transpired during the out-of-court photographic identifications"); *United States v. Dortch*, 342 F. Supp. 3d 810, 814 (N.D. Ill. 2018) ("[Defendants] have offered nothing but conjecture that an examination of the victims might reveal information that suggests

---

[3] Parker filed a pro se motion to suppress the identification before his attorney filed a separate motion to suppress the identification. His attorney specifically filed her motion as a supplement to Parker's pro se motion. For this reason, the Court assumes that Parker's attorney adopted Parker's pro se arguments on this issue and considers their arguments together.

that their identifications were unreliable. Conjecture, however, does not warrant an evidentiary hearing[.]").

With respect to the search warrants, Parker requests an evidentiary hearing as an alternative form of relief "to more fully develop the[] factual matters."[4] Doc. 54 at 10. This does not establish a factual dispute. *Coleman*, 149 F.3d at 677. Nor does the Court think that an evidentiary hearing is necessary because Parker makes purely legal arguments regarding the sufficiency of the affidavit. *See United States v. Brown*, 483 F. App'x 289, 291–92 (7th Cir. 2012) ("[H]ere the only disagreement was whether the application for the search warrant supports the determination of probable cause or, at the very least, is not so meager that a reasonable police officer would recognize the warrant to be invalid. These were purely legal determinations that did not require factual development through an evidentiary hearing." (internal citations omitted)). For these reasons, the Court denies Parker's request for an evidentiary hearing with respect to the motion to suppress the search warrants.

## CONCLUSION

For the foregoing reasons, the Court denies Parker's motions to suppress [50, 51, 53, 54].

Dated: July 16, 2019

SARA L. ELLIS
United States District Judge

---

[4] Similar to the motion to suppress the identification, Parker filed a separate pro se motion to suppress the fruits of the Chicago Warrant before his attorney filed a separate motion. In contrast to the supplemental motion to suppress the identification, there is nothing to indicate Parker's attorney wished to adopt Parker's pro se arguments. Parker does not have a right to file his own motions. *See United States v. Rollins*, 309 F. App'x 37, 38 (7th Cir. 2009) (citations omitted) ("[Defendant] has no right to file a pro se brief *or* motion in any court while counsel represents him."). Therefore, the Court only addresses the arguments raised in Parker's attorney's motion. *See United States v. Brooks*, Crim. No. 1:09MJ71, 2009 WL 3365642, at *1 (N.D.W. Va. Oct. 19, 2009) (collecting cases).