UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>IVAN PARKER | No. 18 CR 495<br><br>Judge Sara L. Ellis |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS
FOR NEW TRIAL AND JUDGMENT OF ACQUITTAL
NOTWITHSTANDING THE VERDICT**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits the following response to defendant's consolidated Rule 29 Motion for Judgment of Acquittal and Rule 33 Motion for a New Trial (R. 97) and respectfully requests that the Court deny defendant's motions.[1]

**I.     INTRODUCTION**

On July 27, 2018, defendant used a firearm and pepper spray to rob a Loomis technician servicing a Chase Bank ATM of $106,335. On October 17, 2018, a grand jury returned an indictment charging defendant with one count of obstructing, delaying, and affecting commerce by robbery, in violation of Title 18, United States Code, Section 1951(a). On November 4, 2019, a jury trial began. At the close of the government's evidence, defendant moved for a judgment of acquittal, which the Court

---

[1] The government further moves *instanter* for permission to file this response, which exceeds 15 pages. This consolidated response addresses two motions that defendant filed together – a motion for judgment of acquittal and motion for a new trial. For ease of reference, the government has consolidated its responses in a single filing.

denied. Tr. 598-99. On November 6, 2019, after three days of trial, a jury found defendant guilty of the robbery. R. 90.

On December 23, 2019, defendant filed motions for a new trial and judgment of acquittal notwithstanding the verdict. R. 97. Defendant's motion for a judgment of acquittal makes two arguments: (1) the Court erred in allowing a special agent to testify about an earlier, out-of-court statement of identification of defendant by defendant's landlord; and (2) without this earlier identification, the other evidence was insufficient to prove defendant's guilt beyond a reasonable doubt. The motion incorporates all previous arguments raised but does not allege any specific errors made by the Court. The defendant's post-trial motions lack merit, and the Court should deny the motions.

## II. DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL LACKS MERIT.

### A. Legal Standard for Judgment of Acquittal

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a guilty verdict against a defendant. Fed. R. Crim. P. 29. In applying Rule 29, the court must view the evidence "in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Seidling*, 737 F.3d 1155, 1159–60 (7th Cir. 2013). A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to find him guilty. *United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) (internal marks omitted).

In reviewing a motion for a judgment of acquittal, this Court reviews the evidence presented to the jury in the light most favorable to the government and makes all reasonable inferences in the Government's favor. *See United States v. Cejas*, 761 F.3d 717, 726 (7th Cir. 2014) (citing *United States v. Larkins*, 83 F.3d 162, 165 (7th Cir. 1996)). This Court may overturn the jury's guilty verdict "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (internal marks omitted). Importantly, it was the jury's role to weigh the evidence and assess the witnesses' credibility; courts do not "second-guess the jury's assessment of the evidence." *United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008).

### B. Sufficient Evidence Supports the Jury's Finding of Guilt.

At trial, the government proved, beyond a reasonable doubt, that defendant was guilty of the robbery charged in Count One of the superseding indictment. The jury's verdict was supported by credible and reliable evidence.

#### 1. The Government's Evidence Proved Defendant Guilty Beyond a Reasonable Doubt.

The principal issue at trial was whether defendant was the individual who robbed the Loomis employee, Peter Sarnecki, on July 27, 2018. The government presented ample evidence from which a jury could find that defendant was the robber.

The video from inside the Chase Bank vestibule showed the robber struggling with Sarnecki and the robber grabbing the bag full of money. The video did not clearly display the robber's face but it did establish that the robber was an individual who matched defendant's general description and that the robber wore jeans, a white

3

shirt, and a black jacket. The video also showed that the robber had a white bandage on his neck which, from the evidence, the jury knew was in the same location as a tattoo on defendant's neck.

The video surveillance from the Loomis truck captured the robber fleeing the scene. Gov't Exs. Clip 106a, Clip 107a. The jury also viewed footage from video cameras along the escape route as the robber ran or rode a bike past 2616 W. 16th Street, 2303 S. Kildare, and 4267 W. Cermak Road. The robber entered the building at 4244 W. Cermak Road. Gov't Exs. Clip 108a, Clip 109a, Clip 110a, Clip 111a, Clip 112a, Clip 114a. This was defendant's apartment building. The video clips show the robber holding the large black bag he took during the robbery and wearing the same clothes – jeans, a white shirt, and black jacket – that he wore during the robbery. The jury could fairly conclude from this evidence that defendant was the robber and that, after struggling with Sarnecki, returned to his apartment with the bag full of cash.

In summary, at trial, the government introduced video from both inside and outside the Chase Bank ATM, which showed a man matching defendant's description rob the Loomis technician. Surveillance video from different cameras tracked defendant from the Chase Bank back to his apartment building. The jury heard evidence that defendant lived in that apartment building, including testimony from his landlord and documents found inside his apartment, and evidence of defendant's spending spree at stores in Chicago and Green Bay in the weeks after the robbery. Finally, the jury also heard audio recordings of defendant's jail calls with his sister,

during which he told her he was going to send her money, and saw the approximately $24,000 found in the sister's apartment in Joliet.

Defendant's landlord, Yousif Khan, testified that in the summer of 2018, defendant and his girlfriend, Felicia Brinson, rented Apartment 2ER in his building. He further testified that shortly after the robbery, law enforcement showed him an image on a cellular telephone. Tr. 409-10. (Khan was shown a particular image at trial but did not remember if it was the same image he saw on the telephone.) At trial, Khan testified that, while he did not remember which photograph he was shown, he recognized defendant as the person depicted in the photograph at the time the photograph was shown to him.[2] Tr. 410 ("I believe they had a picture of Mr. Parker."). On cross-examination, however, defense counsel asked, "And I just want to be clear because it wasn't clear to me when you were testifying. You said they had a picture of Mr. Parker. Did they show you this picture or did they show you a picture of Mr. Parker?" Khan responded, "I don't recall, ma'am." Tr. 421.

Defendant argues that he is entitled to a judgment of acquittal because Khan was the only witness at trial who connected the defendant with the person fleeing from the Chase Bank vestibule and that, without Khan's testimony, the government could not prove its case beyond a reasonable doubt. R. 97 at 4. But Khan's identification of defendant from the photograph was not the only evidence showing

---

[2] FBI Special Agent Dustin Gourley testified that when he visited Khan at the apartment building about a week after the robbery, the building's surveillance video from July 27, 2018, already had been written over. Tr. 570. Special Agent Gourley further explained that he showed Khan an image from the surveillance video at 4263 West Cermak Road, and Khan identified the person in the video as defendant. Tr. 571-74.

5

that the defendant was the Chase Bank ATM robber. Khan, for example, testified that, in the summer of 2018, defendant and his girlfriend had fallen behind on their rent by a month or two and that on July 27, 2018, just a few hours after the robbery, defendant's girlfriend paid him $2,650 in back rent using a money order. Tr. 411-14; Gov't Ex. 302. The jury also received evidence about cash found in defendant's apartment shortly after the robbery which the jury could fairly infer constituted robbery proceeds. FBI Special Agent Michael Lovernick, for example, testified that he recovered $6,850 cash in $100s and $20s, the same denominations as the money taken from the ATM, from defendant's apartment. Tr. 438-39, 497-88; Gov't Exs. 402, 403. Special Agent Bacha and his team discovered approximately $24,000, in $20s and $100s, stacked and bundled in a shopping bag that was inside a black trash bag in her living room. Tr. 518-21; Exs. 26, 34. FBI was led to the apartment by a recorded phone call between defendant and his sister, which the jury also heard during trial.[3] They discussed that defendant had arranged for someone to bring her a large amount of money

> IVAN: You talk to him? Did he say-
> 
> TONI: Yeah he, uh, yea.
> 
> IVAN: Huh?
> 
> TONI: Hello?
> 
> IVAN: Yeah.

---

[3] During the final pretrial conference, defendant objected to the government's proposal to admit only relevant portions of the call. Tr. 10/25/19 at 8. Therefore, the entire 14:50 call was played as Govt Ex. 101. A transcript of the call was provided to the jury while the call was played but was not admitted as evidence.

TONI: Yea, he uh, yea, he uh gave me some money.

IVAN: Okay. Uh, so he gave it to you, for me?

TONI: Mm hmm.

IVAN: Okay, listen. You know what I'm saying. I need you to, uh, put like uh. What he give you? Just say the number, you ain't gotta to say the whole thing.

IVAN: You don't know how much it is?

TONI: Nuh-uh.

IVAN: Ok, well, it's a lot?

TONI: Mm-hmm.

IVAN: A lot, lot?

TONI: *laughing*

IVAN: C'mon why you laugh- stop playing me girl.

TONI: Nah, nah, nah cuz UI over here doing crazy stuff. Yea, yea, he gave me a lot. Yea.

IVAN: Like how much?

TONI: I guess, well I guess all of it, I don't know. All of it, I guess- I don't know-

IVAN: What?

TONI: Yea, he, he gave me some money. Yea, he gave, he gave me some.

IVAN: I'm trying to ask you how much so I can tell you how much to send me and how much to send her. Not all of it, did he?

TONI: Mm-hmm.

IVAN: What? Why did he-

TONI: That's what he say, at least that's what he say. Look, look, I don't know. But, so, so whatchu want me to do?

7

> IVAN: Look, look, look man. Listen to me man. Oh, so he must've got scared huh. *laughing*
>
> TONI: I don't know. UI

Gov't Ex. 101. The discussion continued and defendant's sister discussed different things she had done with the money including buying items for her children. Defendant instructed her to "send her a G, and send me a G," an opaque reference to putting money on defendant's account while he was incarcerated and also putting money on his girlfriend's account.

The jury also learned that defendant's apartment contained evidence consistent with defendant being the Chase Bank ATM robber. The agents recovered from defendant's apartment, for example, a white gauze bandage (like the one the robber wore), new jewelry still inside the boxes, records showing the recent purchase of a vehicle for $4,000, new clothes and shoes, a new television, new furniture, and a new PlayStation 4 with associated games. Tr. 431, 439, 442-43, 452-54; Gov't Exs. 14-25, 408. The FBI also recovered from defendant's apartment approximately $13,000 of receipts from Kay Jewelers, Wal-Mart, Cook Brothers, and other locations. Tr. 443-50, 461; Gov't Exs. 4-13, 30-31, 38, 402, 404, 408, 412, 414. A representative from Cook Brothers, a Chicago furniture store, testified that hundreds of dollars of furniture was delivered to defendant's apartment shortly after the robbery. Tr. 501-07.

The jury heard and saw evidence about defendant's shopping spree in Green Bay, Wisconsin in the days immediately following the robbery. A witness from Kay Jewelers in Green Bay provided the store's records of four different jewelry purchases

8

between July 28, 2018, and August 8, 2018, totaling approximately $3,000 in cash purchases. All of these purchases fell under the same lifetime warranty purchased by "Ivan Parker," which was found in defendant's pocket when he was arrested. Tr. 253-58, 457-48; Gov't Ex. 31. Finally, Cassundra Harris, a friend of defendant's at the time of the robbery, explained that she picked defendant and Brinson up in Chicago and brought them to Green Bay several hours after the robbery. Tr. 531-32. Defendant paid for a rental car and hotel in cash. Tr. 533, 549. He made purchases at various different stores in cash. Harris testified that she remembered in particular how defendant paid for the jewelry and some of the clothing items with multiple $5.00 bills. The jury also viewed video from inside the hotel, a Wal-Mart, and a Buckle (clothing) store in Green Bay, Wisconsin.

These clips depict defendant as being present in each location. The Wal-Mart clip shows defendant purchasing an item in the electronics department and the clerk in the clothing store counting out a large amount of bills, consistent with a purchase being made with $5.00 bills, with defendant waiting nearby. The agents recovered a receipt showing the purchase of a Play Station in Green Bay in the same location as the video clip from the electronics department. Gov't Exs. Clips 116a – 126a. This evidence was sufficient to satisfy the government's burden to prove defendant was the robber and, as a result, defendant's motion for a judgment of acquittal should be denied.

### 2. The Court Properly Admitted Evidence about Khan's Identification of Defendant.

Khan testified at trial that he did not remember which image the agent showed him.[4] Later, Special Agent Gourley explained that the photograph was from video footage of the robber obtained from 4263 West Cermak Road. Defendant objected at the time to this testimony. The government argued at a sidebar that Khan testified that he identified the person in the image shown to him as the robber but that he did not remember which image had been shown to him. The government argued that Khan's earlier identification, and Special Agent Gourley's testimony about it, was admissible under Rule 801(d)(2) because Khan was the declarant on the stand at the time. The Court agreed and overruled the objection. Tr. 571-73. Defendant now argues that he is entitled to a judgment of acquittal because a failure of memory is not sufficient to trigger the admission of an earlier identification pursuant to Rule 801(d)(1)(C).

Rule 801(d)(1)(C) states that a prior statement of identification of a person made after perceiving the person is not hearsay and is admissible as substantive evidence if "the declarant testifies and is subject to cross-examination about a prior statement." "All that the rule requires is that the declarant testifies and is subject to cross-examination" and "that the statement is one of identification." *United States v. Cardena*, 842 F.3d 959, 990 (7th Cir. 2016). "[O]ut-of-court identifications are

---

[4] On cross-examination, defense counsel asked, "And I just want to be clear because it wasn't clear to me when you were testifying. You said they had a picture of Mr. Parker. Did they show you this picture or did they show you a picture of Mr. Parker?" Khan responded, "I don't recall, ma'am." Tr. 421.

10

believed to be more reliable than those made under the suggestive conditions prevailing at trial, and the availability of the declarant for cross-examination eliminates the major danger of hearsay testimony. These reasons remain fully applicable when the person who testifies to the statement of identification is not the person who uttered it, so long as the latter also testifies and is available for cross-examination." *United States v. Elemy*, 656 F.2d 507, 508 (9th Cir. 1981) (citations omitted). Rule 801(d)(1)(C) allows the in-court testimony regarding an out-of-court identification by a party other than the declarant as long as that party is also subject to cross-examination. *Elemy*, 656 F.2d at 508.[5]

The Court correctly permitted Special Agent Gourley to testify regarding the out-of-court identification, where Khan and Special Agent Gourley were both subject to cross-examination. Rule 801(d)(1)(C) countenances testimony about a witness's prior identification in the face of a failure of memory by the witness at trial. *See, e.g., United States v. Owens,* 484 U.S. 554, 560 (1988); *United States v. Keeter,* 130 F.3d 297, 302 (7th Cir. 1997). Here, in keeping with Rule 801(d)(1)(C) and these cases,

---

[5] In *Elemy*, at the trial, a witness-declarant testified regarding her out-of-court identification of the defendant as one of two bank robbers. *Elemy*, 656 F.2d at 508. Over the defendant's objection, the trial court allowed an FBI agent to testify about the witness's prior identification of the defendant, as well as identification procedures before the witness's identification of the defendant. *Id*. On appeal, the defendant argued that the FBI agent's testimony was inadmissible hearsay and not admissible under Rule 801(d)(1)(C). The appellate court stated that the declarant testified, and the defense counsel was permitted to cross-examine the witness. Additionally, nothing indicated that the defense counsel could not recall the declarant for reexamination after the FBI agent testified. Thus, the *Elemy* court concluded that because the requirement of the witness's availability for cross-examination was met, Rule 801(d)(1)(C) allowed for not only the declarant's testimony, but also the FBI agent's testimony regarding the identification. *Id*. Accordingly, the FBI agent's statements were non-hearsay and admissible. *Id*.

both Khan and Special Agent Gourley were available for cross-examination about Khan's earlier identification. Defendant was also able to bring out to the jury, and fully utilize, the fact that Khan did not remember details about the earlier identification.

Moreover, nothing in the record suggests that Khan was unavailable for reexamination after Special Agent Gourley testified. Concerns regarding conditions or circumstances that may bear on reliability go toward the weight of the evidence, not its admissibility. To be understandable, an identification must have context. Special Agent Gourley's testimony regarding the identification met the requirements of Rule 801(d)(1)(C) as Special Agent Gourley was also subject to cross-examination. Accordingly, because both Khan and Special Agent Gourley were available for cross-examination and were, in fact, cross-examined, both of their testimonies regarding Khan's identification statements were non-hearsay and admissible under Rule 801(d)(1)(C). *See United States v. Foster*, 652 F.3d 776, 788 (7th Cir. 2011) (An out-of-court identification of the defendant was admissible non-hearsay when the declarant testified at trial and was subject to cross-examination regarding the identification.); *see also United States v. O'Malley*, 796 F.2d 891, 899 (7th Cir. 1986) (An out-of-court identification can be introduced through the declarant or through a third-party witness to the identification, e.g. a law enforcement officer.).

Last, even assuming that Khan's prior identification of defendant was impermissibly admitted, there was sufficient evidence for a rational trier of fact to find defendant guilty beyond a reasonable doubt without Khan's identification of

12

defendant. The record reflects that: (1) defendant matched the description of the robber; (2) the Chase Bank video showed that the robber wore a white bandage on his neck in the same location as the defendant's tattoo and gauze bandages were found in defendant's apartment; (3) the robber went into defendant's building after he committed the robbery; (4) defendant was behind on rent prior to the robbery; (5) the rent on defendant's apartment was paid shortly after the robbery; (6) defendant made multiple cash purchases in the weeks following the robbery, including with five dollar bills that were missing from the money later recovered; and (7) defendant had over $6,000 in cash in his apartment and had over $24,000 in cash sent to his sister's apartment.

## III. DEFENDANT'S MOTION FOR A NEW TRIAL LACKS MERIT.

### A. Legal Standard for New Trial

A court may vacate a judgment and grant a new trial upon a defendant's motion "if the interest of justice so requires." Fed. R. Crim. P. 33; *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012). A new trial is in the interest of justice where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989).

"[A] defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir. 2006). Rule 33 motions are generally disfavored and courts should only grant them in "the most extreme cases." United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998) (internal marks omitted). "A jury verdict in a criminal

13

case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994) (internal marks omitted). While the court has broad discretion in ruling on a motion under Rule 33, the Seventh Circuit has cautioned:

> The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.... The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.... Motions for new trial based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really exceptional cases.

*United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (internal marks omitted).

### B. Defendant's Conclusory Allegations of Error Do Not Support the Granting of a New Trial.

The Rule 33 movant bears the responsibility of "develop[ing] his arguments and present[ing] the court with adequate grounds and authority to grant the relief requested." *United States v. Ervin*, No. 2:00-28-TS, 2005 WL 1796204, at *2 (N.D. Ind. July 26, 2005). "Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). In addition, "[i]n order to prevail on a motion for a new trial, a defendant must demonstrate that substantial prejudicial error occurred during the trial. The burden upon a defendant to establish the existence of prejudicial error is a heavy one. It is not satisfied by unsupported, conclusory allegations or speculation." *United States v. Balistrieri*, 577 F. Supp. 1532, 1545 (E.D. Wis. 1984). Defendant's meritless Rule 33 motion does not sustain his burden to identify an error, let alone demonstrate substantial prejudice.

14

Defendant attempts to shoehorn into his post-trial motions "any and all arguments raised in motions and memorandum, and any argument made on the record in this case." R. 97 at 6. The government is unable to identify any particular arguments of significance that, even if wrongly decided, would have prejudiced defendant. For example, defendant filed only one motion *in limine* to exclude a firearm and crack cocaine in his apartment, which was granted. R. 70. In response to the government's motions *in limine*, defendant sought permission to argue there had been missing witnesses at trial, R. 78, which the Court granted, Tr. 6-7.

### C. The Court Properly Denied Defendant's Pretrial Motions to Suppress.

Defendant argues that the denial of his pretrial motions to suppress, combined with various unspecified errors made at trial, have prejudiced him. Because this Court properly denied defendant's pretrial motions to suppress evidence, there was no error.

Defendant first filed his motions to suppress *pro se* on March 11, 2018. R. 50, R. 51. Both motions focused on the fact that Victim A (Peter Sarnecki) identified defendant during the robbery investigation. Defendant's attorney later supplemented his motions and refocused the argument: defendant sought to suppress the search warrants for his and his sister's residence because they were not based on probable cause. R. 54. The problem with the affidavit, defendant argued, was Witness F's (landlord Yousif Khan) identification of defendant after reviewing surveillance video provided by the FBI. The affidavit failed to sufficiently detail Witness F's motivations for providing this information to FBI, Witness F's criminal record, or Witness F's

15

relationship with defendant. *See id.* The government responded to defendant's motions, R. 59, and defendant replied, R. 60. This Court denied defendant's motions to suppress. R. 66.

The Court correctly reasoned that Khan's statements to law enforcement were reliable. R. 66 at 6-8. Additionally, the Court correctly reasoned that there were no coercive tactics involved in soliciting Sarnecki's identification of defendant. R. 66 at 4-6. The sequential photo array shown to Sarnecki was not unduly suggestive as it included a photograph of defendant, as well as photographs of other individuals who looked similar to him. The six photographs were all printed in color and were the approximate same size. Under those circumstances, the array could not be considered suggestive. *See United States v. Carter*, 410 F.3d 942, 948 (7th Cir. 2005) (collecting cases holding that six is a sufficient number of photos for such a line-up when the photographs are similar). Additionally, other safeguards were utilized to ensure reliability. The agent who administered the photo array had no underlying knowledge of the facts of the case. And, there was no evidence that the agent improperly influenced Sarnecki. At the outset, Sarnecki was instructed, "The person who committed this crime may or may not be among the photographs presented." Accordingly, Sarnecki's identification was not unduly suggestive and the circumstances of his identification demonstrated that it was reliable. Moreover, any prejudice defendant believes he suffered as a result of Sarnecki's identification did not carry over into the trial, because Sarnecki did not identify defendant at trial. Indeed, Sarnecki testified at trial as follows:

> Q. Mr. Sarnecki, would you recognize the robber if you saw him again?
>
> A. I cannot at 100 percent say for sure it was the robber. I could not.
>
> Q. Did you previously identify the robber in a photo array?
>
> A. I picked someone out who I thought was the robber.

Tr. 338.

### D. The Defendant's Argument Regarding the Cumulative Effect of Errors Should Be Rejected.

In summary fashion, defendant then claims that the cumulative effect of the trial errors deprived him of a fair trial. "Cumulative errors, while individually harmless, when taken together can prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law." *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). To demonstrate cumulative error, defendants must show that "(1) at least two errors were committed during the trial, and (2) these errors so infected the jury's deliberation that they denied [defendants] a fundamentally fair trial." *United States v. Avila*, 557 F.3d 809, 821-22 (7th Cir. 2009) (internal citation, quotation marks omitted). Courts use "care not to magnify the importance of errors that had little significance in the trial setting," and instead will only grant a new trial "only if the effect of the errors, considered together, could not have been harmless or that but for the errors, the outcome of the trial probably would have been different." *Id.* (internal brackets, ellipses, and marks omitted).

Defendant failed to identify in his post-trial motions even one legal error, let alone the requisite two, that would entitle him to relief for cumulative errors at trial.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's Rule 29 Motion for Judgment of Acquittal and Rule 33 Motion for a New Trial.

          Respectfully submitted,

          JOHN R. LAUSCH, JR.
          United States Attorney

By:   s/ Christine M. O'Neill
      TOBARA S. RICHARDSON
      CHRISTINE M. O'NEILL
      Assistant United States Attorneys
      219 S. Dearborn Street
      Chicago, Illinois 60604
      (312) 353-4305

Dated: January 24, 2020