UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 18 CR 495 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| IVAN PARKER, ) | |
| ) | |
| Defendant. ) | |

## **OPINION AND ORDER**

A federal grand jury indicted Defendant Ivan Parker on one count of obstructing, delaying, and affecting commerce by robbery, in violation of 18 U.S.C. § 1951(a). On November 6, 2019, following a three-day trial, a jury returned a guilty verdict against Parker. Parker now moves for a judgment of acquittal, or alternatively, a new trial. Parker argues that the Court erred in allowing testimony that identified him in connection with the robbery and that, without this evidence, a jury could not conclude that he was the individual who committed the robbery. Parker also argues that this lack of evidence, coupled with errors made by the Court, require a new trial. But the Court did not err in allowing the testimony challenged by Parker and, even without this evidence, the jury had sufficient evidence to find beyond a reasonable doubt that Parker was the robber. Parker has also not identified any errors that require a new trial. The Court therefore denies Parker's motion for a judgment of acquittal, or alternatively, a new trial.

## **BACKGROUND**

Just before 7:00 a.m. on July 27, 2018, an individual pulled a gun on and pepper-sprayed Peter Sarnecki, a Loomis armored car employee who was changing money out of an ATM in the vestibule of the Chase bank located at 3856 West 26th Street in Chicago. After a brief struggle, the individual fled, taking with him a black "coal bag" containing $106,335 in cash.

Agents investigating the robbery collected video footage from cameras at the bank, the ATM, Sarnecki's armored vehicle, and businesses and residences in the area. This video evidence showed that after fleeing on foot and then by bicycle, the robber entered a building at 4244–48 West Cermak Road. *See, e.g.*, Doc. 97 at 4 (assertion by Parker that investigating agents tracked the robber "to 4246 W. Cermak"). At the time, Parker and his girlfriend, Felicia Brinson, were renting an apartment in this building.

As part of their investigation, FBI agents met with Yousif Khan, the landlord of the 4244–48 West Cermak building. Then, on August 10, FBI agents searched Parker's and Brinson's apartment pursuant to a warrant. Although Parker entered the apartment building just before the FBI did, he was not in his apartment. During the FBI's search, however, a resident ran out of an apartment across the hall yelling "He's in there. He's in there." Doc. 100 at 12–13. The FBI found Parker lying on the ground in the resident's apartment and arrested him. On October 17, a grand jury charged Parker with committing the July 27 robbery.

Trial began on November 4, 2019. The Government presented video clips, documentary and physical evidence, and testimony from a number of witnesses to support its case at trial. Parker presented evidence through exhibits and stipulations, but he did not testify or offer any witnesses in his defense. After the Government rested its case, Parker orally moved for a judgment of acquittal. The Court denied the motion. The jury thereafter found Parker guilty.

## LEGAL STANDARD

After a guilty verdict, a defendant may move for a judgment of acquittal on the basis that "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). Evidence is insufficient to sustain a conviction only if "after viewing the evidence in the light most favorable to the Government, the record is devoid of evidence from which a reasonable jury could find

guilt beyond a reasonable doubt." *United States v. Wrobel*, 841 F.3d 450, 454 (7th Cir. 2016) (citation omitted); *see also United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019) ("We 'consider the evidence in the light most favorable to the Government,' and will reverse 'only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" (citation omitted)). The Court examines "the evidence as a whole," including any evidence the defendant has presented in his own defense. *United States v. Wilson*, 879 F.3d 795, 802 (7th Cir. 2018). "When challenging a conviction based on sufficiency of the evidence, a defendant bears a heavy burden that is nearly insurmountable." *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017) (citation omitted) (internal quotation marks omitted). The Court will sustain a conviction so long as "*any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. O'Brien*, 953 F.3d 449, 456 (7th Cir. 2020) (emphasis added) (citation omitted).

Federal Rule of Criminal Procedure 33 allows "a district court to grant a timely request for a new trial 'if the interest of justice so requires.'" *United States v. O'Malley*, 833 F.3d 810, 811 (7th Cir. 2016) (quoting Fed. R. Crim. P. 33(a)). In resolving a motion for a new trial, courts must consider the weight of the evidence, including the credibility of witnesses, to determine "whether the verdict is against the manifest weight of the evidence." *United States v. Washington*, 184 F.3d 653, 657–58 (7th Cir. 1999). The Court should grant a new trial "only if the evidence preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *O'Brien*, 953 F.3d at 456 (citation omitted).

## ANALYSIS

**I.      Sufficiency of the Evidence**

To convict Parker of robbery under 18 U.S.C. § 1951(a), the Government had to prove beyond a reasonable doubt that he committed a robbery that affected interstate commerce. *See United States v. Carr*, 652 F.3d 811, 812 (7th Cir. 2011); Doc. 100 at 140–41. Parker argues that an acquittal or a new trial is necessary because the evidence is insufficient to show that he was the individual who committed the July 27 robbery. The crux of Parker's argument is that the Court erroneously admitted testimony from FBI Special Agent Dustin Gourley about what Khan (Parker's landlord) said to Gourley during the robbery investigation. This testimony, Parker continues, is the only evidence connecting Parker to the robbery, and without this testimony, the Government cannot establish Parker's guilt beyond a reasonable doubt.

At trial, the Government asked Khan about a photograph marked at the time as Government Exhibit 44.[1] Khan testified that he did not think he had ever seen the photograph and that although law enforcement had showed him a cell phone image that resembled Parker, he could not recall whether that image was the same as the photograph before him:

> Q. When you met with law enforcement, did they show you Government's Exhibit 44?
>
> A. No, I don't think I seen this picture.
>
> Q. Let me ask you another question. When you met with law enforcement, were you shown an image on a cellular phone?

---

[1] Parker asserts that the Government showed Khan "a still image from surveillance video that agents recovered while investigating the path of the Chase bank robber after the robbery." Doc. 97 at 4. The next day, the Government moved into evidence as Government Exhibit 44 a cell phone photograph of Government Exhibit 412, which is an identification card that the FBI agents recovered from Parker's wallet when they arrested him. Thus, the Government Exhibit 44 admitted into evidence differs from the photograph shown to Khan during his testimony the previous day. *See* Doc. 100 at 70 (statement by Parker's counsel that she "thought 44 was a different exhibit" and the Government responding that "there was something yesterday marked as 44, but it wasn't admitted").

4

> A. Yes, ma'am.
>
> Q. And what did that image show? Did it show a person?
>
> A. Yes, ma'am.
>
> Q. Okay. I'm now going to ask that you look at Government's Exhibit 44 again and ask does it appear to depict what you viewed on the cellular phone of – when law enforcement showed you an image?
>
> A. I don't recall what I saw on the – I don't remember if it's the same picture or not.
>
> Q. Okay. When you saw the image, was it of a person that law enforcement showed you?
>
> A. Yes.
>
> Q. And when they showed you the image, did they ask you a question about that image?
>
> A. If it resembled somebody in a building.
>
> Q. And did you provide them with an answer?
>
> A. I believe they had a picture of Mr. Parker.

Doc. 99 at 89–90. Khan then gave the following testimony during cross-examination by Parker's counsel:

> Q. And I just want to be clear because it wasn't clear to me when you were testifying. You said they [law enforcement] had a picture of Mr. Parker. Did they show you this picture or did they show you a picture of Mr. Parker?
>
> A. I don't recall, ma'am.
>
> Q. Okay. So just so we're clear, you're not sure if this is the picture that they showed you on whatever day it was that they came to ask you about a particular person?
>
> A. I'm not – not sure.

*Id.* at 101–02.

Later at trial, Special Agent Gourley testified that he had shown Khan a cell phone photograph taken of surveillance video footage obtained from Mei Ye, who owned a building across the street from Khan's apartment building.[2] The Government then asked Gourley what Khan said in response to being shown the photo, to which Parker objected on hearsay grounds. The Government responded that it was "trying to perfect some impeachment from yesterday," Doc. 100 at 72, and at a subsequent sidebar conference, the Government argued that Khan's response was admissible under Federal Rule of Evidence 801(d)(2) based on Khan's trial testimony that he did not know or remember the photograph that the FBI showed to him.[3] The Court overruled Parker's objection, and Gourley testified that after he showed Khan the image taken of Ye's video footage, Khan told Gourley that he thought the person looked like Parker.

Parker argues that Gourley's testimony about what Khan told him was inadmissible hearsay because Khan's identification testimony was never inconsistent. The Court disagrees. Federal Rule of Evidence 801(d)(1)(C) excludes a statement from the definition of hearsay if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . identifies a person as someone the declarant perceived earlier." This exception does not hinge upon whether the declarant's testimony is consistent or inconsistent with a prior statement, as is the case with other Rule 801(d)(1) exceptions. *See* Fed. R. Evid. 801(d)(1)(A) (prior statement must be "inconsistent with the declarant's testimony"); *id.* 801(d)(1)(B) (prior statement must be "consistent with the declarant's testimony"). Indeed, a witness need not

---

[2] Ye testified that her building was located at 4261–63 West Cermak Road, whereas the parties stipulated that Ye's surveillance video footage was obtained from cameras located at 4267 West Cermak Road. This discrepancy is immaterial because both addresses are across the street from and near the 4244–48 West Cermak building where Parker lived at the time.

[3] The Government's reference to Rule 801(d)(2) appears to be a mistake. That subsection only applies to statements "offered against an opposing party," and Khan was not an opposing party. Fed. R. Evid. 801(d)(2).

6

actually forget or change his identification at trial for Rule 801(d)(1)(C) to apply. *United States v. Cardena*, 842 F.3d 959, 990 (7th Cir. 2016). All the rule "requires is that the declarant testifies and is subject to cross-examination . . . and that the statement is one of identification[.]" *Id.*; *accord United States v. Foster*, 652 F.3d 776, 788 (7th Cir. 2011). In any event, Parker concedes that Khan "did not remember what he was shown to make his initial identification" of Parker, Doc. 97 at 5, which is an example of a situation governed by Rule 801(d)(1)(C). *See United States v. Owens*, 484 U.S. 554, 562–63 (1988) ("Rule 801(d)(1)(C) was in part directed to . . . memory loss that makes it impossible for the witness to provide an in-court identification or testify about details of the events underlying an earlier identification."); *Cardena*, 842 F.3d at 990 (a witness' inability "to make an identification at trial is just one example of a common circumstance in which Rule 801(d)(1)(C) is invoked").

Here, Gourley's challenged testimony satisfied all the requirements of Rule 801(d)(1)(C). The declarant, Khan, testified at trial. When asked upon direct examination and cross-examination whether the FBI showed him the photograph at issue, Khan testified that he did not think so or that he could not recall. In response to this testimony, the Government called Gourley to testify as to what he showed Khan (a cell phone photograph taken from Ye's video footage) and Khan's response, which identified Parker as the individual in the photograph. *See Foster*, 652 F.3d at 788–89 ("So long as the requirements of Rule 801(d)(1)(C) are met, government agents may testify about a prior statement of identification made by a witness who 'identified the defendant in a lineup or photospread, but forgets, or changes, his testimony at trial.'" (citation omitted)). Parker cross examined Gourley, and although Gourley testified the day after Khan testified, nothing prevented Parker from recalling and re-examining Khan about his identification after Gourley finished testifying. Thus, Parker had the opportunity to cross

7

examine Khan about his prior identification as contemplated by Rule 801(d)(1)(C), but chose not to exercise that right. *See Cardena*, 842 F.3d at 987, 989–90 (finding that a declarant was subject to cross-examination even though an officer described the circumstances of the declarant's prior identification after the declarant had finished testifying); *United States v. Elemy*, 656 F.2d 507, 508 (9th Cir. 1981) (holding that an FBI agent's testimony regarding a declarant's prior identification was admissible where nothing in the record suggested that the declarant was unavailable for re-examination after the agent's testimony); *see also Foster*, 652 F.3d at 788–89 (finding that a declarant was subject to cross-examination regarding later testimony from an FBI agent about the declarant's previous identification of the defendant where the district court expressly gave the defendant the opportunity to recall and cross-examine the witness). Accordingly, the Court did not err in admitting Gourley's testimony about Khan's identification of Parker as the individual shown in Ye's surveillance video footage.

Regardless of the admissibility of this testimony, however, it was far from the only evidence connecting Parker to the robbery.[4] The jury saw video footage of the robbery itself, which showed the robber attack Sarnecki and then flee after taking a black bag. The robber resembled Parker and wore a white bandage on his neck in the same place that Parker has a tattoo on his neck. The jury also saw video footage from along the robber's escape route. This footage—specifically, Ye's surveillance video—showed the robber's face at different moments, and the jury, having a picture of Parker (Government Exhibit 1) and seeing him in the courtroom, could have reasonably identified the robber as Parker. And even if the jury did not make such a

---

[4] The Court has considered the trial evidence both in the light most favorable to the Government, as required for a motion of acquittal, and by making its own assessment of the weight of the evidence, as required for a motion for a new trial. *See Washington*, 184 F.3d at 657–58. Especially given Parker's failure to challenge the credibility of any witness or to explain why a reweighing of the evidence warrants a new trial, the Court finds it unnecessary to engage in two "end-to-end review[s] of the same evidence" to address the different standards. *See United States v. Conley*, 875 F.3d 391, 399–400 (7th Cir. 2017).

positive identification, it still could have reasonably concluded, based on the video evidence, that (1) the robber captured on video by Ye's surveillance cameras[5] entered Parker's apartment building shortly thereafter and (2) this fact was evidence of Parker's involvement, as opposed to mere coincidence.

Nor was this video evidence the only evidence upon which the jury could have reasonably relied to convict Parker. The Government also presented ample evidence demonstrating that shortly after the robbery, Parker and Brinson (Parker's girlfriend and roommate) suddenly possessed—and spent—large amounts of cash without explanation. "It is well settled that the sudden, unexplained acquisition of wealth is competent evidence supporting proof of guilt in larceny or crimes involving a motive of enrichment," and "[p]roof of possession of substantial sums of money after the date of an offense" by the defendant, a close relative, or an accomplice "may be admissible circumstantial evidence where warranted by the particular facts of the case." *United States v. Crisp*, 435 F.2d 354, 360 (7th Cir. 1970). Similarly, "[s]pending sprees, like other evidence of pecuniary gain, tend to show participation in crimes where financial enrichment is the motive." *United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991); *see also United States v. Kwitek*, 467 F.2d 1222, 1225 (7th Cir. 1972) ("Expensive trips, gambling and other instances of free spending and high living may be pertinent in crimes involving a motive of enrichment."). "Such evidence is competent because the sudden and unexplained presence of wealth supports an inference that the wealth is the fruit of the crime for which the defendant stands accused." *United States v. Wesley*, 648 F.3d 640, 645 (8th Cir. 2011).

The Government presented evidence that on March 23, 2018, Parker and Brinson had less than $500 in one of their accounts and that on May 25, 2018 (two months before the robbery),

---

[5] Parker does not dispute that the individual shown on Ye's surveillance footage is the robber.

9

they had only $37.03 in another of their accounts. Khan, Parker's landlord, also testified that as of the date of the robbery, Parker and Brinson were at least several hundred dollars behind on rent. Yet, a mere hour-and-a-half after the robbery, Brinson was able to give Khan $2,650 by money order to cover her and Parker's rent.

Later that day, Parker, Brinson, and Cassundra Harris drove to Green Bay, Wisconsin, where Parker embarked on a three-day spending spree.[6] Surveillance video, Harris' trial testimony, and receipts recovered from Parker, his apartment, and outside his apartment building provided a sufficient evidentiary basis upon which the jury could reasonably rely to find that over the next three days, Parker bought shoes and clothes costing more than $586; a video game console, video games, and other items from Wal-Mart costing more than $570; and diamond jewelry (including two pairs of diamond earrings) costing more than $2,000. Parker made all these purchases with cash, and he made at least some of them using only $5 bills, including clothing that cost almost $300 and a pair of diamond earrings that cost more than $500. In addition to these purchases, Parker gave Harris more than $1,500 cash in $20 and $100 bill denominations so that she could rent him a hotel room and a car using her debit card. A jury could have reasonably linked Parker's cash-only spending spree in Green Bay to the July 27 robbery, especially given that Parker exclusively used monetary denominations—$5, $20, and $100 bills—the same as those placed in the coal bag before it was stolen. *See United States v. Vannerson*, 786 F.2d 221, 222–23 (6th Cir. 1986) (defendants' sudden expenditure of cash in the same denominations as money stolen from an armored truck was probative of their involvement in the theft).

Parker's spending did not end when he returned to Chicago. Receipts recovered from Parker's apartment show that on August 7, 2018, Parker spent more than $1,900 cash at Wal-

---

[6] At the time, Harris was engaged to Brinson's brother.

Mart, Cook Brothers, and Burlington in Chicago. The next day, August 8, Parker was back in Green Bay, where he bought a car for $4,000. He also paid in cash for fashion jeans costing $178, another pair of diamond earrings costing more than $450, and warranties for his recent jewelry purchases costing nearly $475. The same day, Parker or Brinson deposited $2,000 in $100 bills into an account that, before the deposit, had a balance of only $0.07. Two days later, on August 10, Parker paid the Illinois Department of Revenue $355 in cash. And when FBI agents arrested Parker later that day, they recovered $642 cash from Parker himself, $450 cash from one portion of a dresser in his apartment, and $6,400 cash (in $20 and $100 bills) from underneath men's clothing in another portion of the dresser. All told, in the two weeks between the July 27 robbery and Parker's arrest, Parker and Brinson spent more than $14,000, deposited $2,000, and were found to possess approximately another $7,500 in cash.

But that is not all. Seven weeks after the robbery, FBI agents found $24,780 in cash in the apartment of Parker's sister, Toni Parker. This cash consisted of bills of the same denominations as the cash stolen during the July 27 robbery. The jury also heard a phone conversation between Parker and his sister during which the two discussed the fact that Parker had arranged for someone to bring Ms. Parker a large amount of money. During the phone call, Parker also repeatedly tells his sister to send him and another person "a G," i.e., $1,000. Based on this evidence, the jury could have reasonably concluded that the cash found at Ms. Parker's apartment was at least some of the money stolen during the July 27 robbery. *See Crisp*, 435 F.2d at 360 ("[P]ossession of cash by a close relative . . . may also hold relevance where sufficiently connected by other circumstances to the defendant and his alleged criminal offense.").

In sum, there was more than sufficient evidence, even without Special Agent Gourley's testimony about Khan's identification, upon which the jury could reasonably rely to find beyond

11

a reasonable doubt that Parker was the robber. The Court therefore denies Parker's motion for acquittal and a new trial based on the sufficiency of the evidence.

## II. New Trial

Alternatively, Parker argues that the lack of substantial evidence to support guilt, coupled with errors the Court made before and during trial, violated his right to due process of law and requires a new trial. Parker's arguments are unavailing.

Parker claims that "[t]he jury was presented with multiple photographs of items, many of which were purchased on unknown dates" and other items purchased after the robbery "by unknown individuals." Doc. 97 at 7. He also claims that "the only material witness" (Parker presumably means Khan) was "unsure as to what picture he based his identification from." *Id.* The Court has already rejected Parker's argument regarding Khan's identification. As for the complained-of photographs and items, Parker does not direct the Court to any portion of the record where he objected to the presentation or admission of this evidence. *See United States v. Lampkins*, 47 F.3d 175, 179 (7th Cir. 1995) (a party cannot cure its failure to object to testimony at trial by raising it in a post-trial motion for a new trial); *United States v. Hack*, 205 F.2d 723, 727 (7th Cir. 1953) ("Where defendant does not object to the admission of objectionable evidence during the trial, such objection is waived and cannot be raised for the first time on motion for a new trial[.]"). To the contrary, the Government moved into evidence photographs of several items (such as headphones, new shoes, new clothes, and a new television) that were found in Parker's apartment *without objection* from Parker. Nor does Parker explain how the presentation of the complained-of (but unidentified) photographs and items could have prejudiced the jury's verdict. *See United States v. Driggers*, 913 F.3d 655, 659 (7th Cir. 2019) ("A defendant is entitled to a new trial only when 'there is a reasonable possibility that the trial

error had a prejudicial effect on the jury's verdict.'" (citation omitted)). In fact, Parker does not even identify the exhibit numbers of the photographs and items with which he takes issue. This falls well short of Parker's obligation to "develop[] his arguments and present[] the court with adequate grounds" to order a new trial. *United States v. Fechete*, No. 06 CR 923-1, 2008 WL 4200286, at *1 (N.D. Ill. Sept. 10, 2008); *see also United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("We have repeatedly warned that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]'" (citation omitted)).

Parker also argues that the Court erred in denying his pretrial motions to suppress. However, instead of making additional substantive arguments as to why this decision is incorrect, Parker merely "adopt[s] and reassert[s] the arguments and law cited in those pretrial filings." Doc. 97 at 6. The Court rejects these arguments for the reasons set forth in its July 16, 2019 rulings. *See* Docs. 66, 102.

The remainder of Parker's argument alleges error as set forth in "any and all arguments raised in motions and memorandum," "the motions and objections made through the course of trial," and, more broadly, "any argument made on the record in this case." Doc. 97 at 6–7. But it is not the Court's job to sift through the trial record—let alone the record of the *entire case*—to identify arguments and objections that could individually or cumulatively show the need for a new trial. *See Holm*, 326 F.3d at 877 (explaining that "even in the criminal context," it is not the court's obligation "to research and construct the legal arguments open to parties, especially when they are represented by counsel" (citation omitted)); *United States v. Williams*, 877 F.2d 516, 518–19 (7th Cir. 1989) (explaining that it is not the court's "duty to comb the record in order to discover possible errors" that undermine a conviction); *United States v. Benalcazar*, No. 09 CR 144, 2011 WL 4553027, at *11 n.2 (N.D. Ill. Sept. 29, 2011) (refusing to address a defendant's

13

undeveloped arguments for a new trial). That is Parker's duty, and he has failed to carry it out. As such, Parker has not demonstrated that the Court should grant him a new trial.

## CONCLUSION

For the foregoing reasons, the Court denies Parker's motion for a judgment of acquittal, or alternatively, a new trial [97].

Dated: June 29, 2020

_____
SARA L. ELLIS
United States District Judge